1
2
3
4
5
6
7
8
9

Christopher Q. Pham, SBN: 206697
        E-mail: cpham@criterioncounsel.com
Marcus F. Chaney, SBN: 245227
        E-mail: mchaney@criterioncounsel.com
CRITERION COUNSEL, LAW CORPORATION
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:   (818) 888-7540
Facsimile:    (818) 888-7544

Attorneys for Plaintiff
BOSE CORPORATION

10
11
12

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| BOSE CORPORATION, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ORANGE CONNEX GLOBAL USA CORPORATION, a New Jersey Corporation; ORANGE CONNEX GLOBAL USA INC., a Delaware Corporation; ORANGE CONNEX GLOBAL GROUP LIMITED, a Hong Kong Limited Company; and DOES 1-10, Inclusive, <br><br> Defendants. | Case No.:  2:26-cv-01844 <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **(1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114/*Lanham Act* § 32]** <br> **(2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION/FALSE ADVERTISING [15 U.S.C. § 1125(a)/*Lanham Act* § 43(a)]** <br> **(3) TRADEMARK DILUTION [15 U.S.C. § 1125(c)]** <br> **(4) UNFAIR BUSINESS PRACTICES [*BUSINESS & PROFESSIONS CODE* § 17200]** <br> **(5) CONTRIBUTORY TRADEMARK INFRINGEMENT** <br> **(6) VICARIOUS TRADEMARK INFRINGEMENT** <br> **(7) DECLARATORY RELIEF** |

COMES NOW, Plaintiff BOSE CORPORATION, a Delaware Corporation (hereinafter "Plaintiff" and/or "BOSE"), hereby allege as follows:

### PARTIES

1.    This case involves Defendants' reckless and intentional advertising, marketing, selling, and distribution of counterfeit audio products bearing the famous BOSE® trademarks. Defendants continue to infringe on Plaintiff's registered trademarks after receiving numerous cease-and-desist demands and follow-up notices.

2.    Plaintiff BOSE is now, and was at the time of the filing of this Complaint and at all intervening times, a Delaware Corporation, with its corporate headquarters located in Framingham, Massachusetts, and with retail sales and distribution throughout the City of Los Angeles, County of Los Angeles, and the State of California. Plaintiff is duly authorized and licensed to conduct business in the State of California.

3.    Plaintiff alleges, on information and belief, that Defendant ORANGE CONNEX GLOBAL USA CORPORATION is now, and was at the time of filing this Complaint, a New Jersey Corporation doing business throughout the State of California and with its principal place of business and fulfillment warehouse located at 1000 High Street, Perth Amboy, New Jersey.

4.    Plaintiff alleges, on information and belief, that Defendant ORANGE CONNEX GLOBAL USA INC. is now, and was at the time of filing this Complaint, a Delaware Corporation doing business throughout the State of California with its principal place of business and fulfillment warehouse located at 17800 Castleton Street, Suite 665, City of Industry, California, and also at 5880 West Fuqua Street, Suite 200, Houston, Texas.

5.    Plaintiff alleges, on information and belief, that Defendant ORANGE CONNEX GLOBAL GROUP LIMITED is now, and was at the time of filing this Complaint, a Hong Kong Limited Company doing business throughout the State of

**COMPLAINT FOR DAMAGES**

California, and it maintains control and has some, if not all, ownership interests in Defendants ORANGE CONNEX GLOBAL USA CORPORATION and ORANGE CONNEX GLOBAL USA INC. (Defendants ORANGE CONNEX GLOBAL USA CORPORATION, ORANGE CONNEX GLOBAL USA INC., and ORANGE CONNEX GLOBAL GROUP LIMITED are collectively referred herein as "Defendants" and/or "ORANGE CONNEX").

6. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff, therefore, sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

7. Plaintiff further alleges that Defendants, and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally and concurrently liable and responsible with the named Defendants upon the causes of action hereinafter set forth and shall henceforth be referred to collectively as "Defendants."

8. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein that Defendants, and DOES 1-10, inclusive, and each of them, were the agents, servants and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service or employment.

## JURISDICTION/VENUE

9. This Court has jurisdiction over the subject matter of the First, Second, Third, Fifth, Sixth, and Seventh Causes of Action (violation of the *Lanham Act*) pursuant to 15 U.S.C. § 1121 and/or 28 U.S.C. §§ 1331 and/or 1338(a). This Court has jurisdiction over the subject matter of the Fourth Cause of Action as this derivative claim stems from the primary claims relating to violations of the federal the *Lanham Act*.

/ / /

- 3 -
**COMPLAINT FOR DAMAGES**

10.     This Court has general personal jurisdiction over Defendant ORANGE CONNEX GLOBAL USA INC. inasmuch as it is a Delaware Corporation authorized to conduct business within the State of California with a principal place of business located at 17800 Castleton Street, Suite 665, City of Industry, California.

11.     This Court has specific personal jurisdiction over Defendants ORANGE CONNEX GLOBAL USA CORPORATION and ORANGE CONNEX GLOBAL GROUP LIMITED inasmuch as they have committed the tortious activities of trademark infringement alleged in this Complaint by purposefully directing its infringement activities to consumers in the State of California. Defendants ORANGE CONNEX GLOBAL USA CORPORATION and ORANGE CONNEX GLOBAL GROUP LIMITED have sufficient minimum contacts with California such that the exercise of jurisdiction over them by this Court does not offend traditional notions of fair play and substantial justice.  The counterfeit BOSE® products were purchased from California through eBay.com, paid with funds from a financial institution in California, and Defendants purposefully shipped the counterfeit products in California.  Venue is also proper in this district because Plaintiff conducts substantial business throughout the State of California.

12.     This Court also has specific jurisdiction since all Defendants have committed acts of trademark infringement and unfair competition in this district and/or Defendants have sufficient minimum contacts with this district to such that the exercise of jurisdiction over Defendants by this Court does not offend traditional notions of fair play and substantial justice.  Among other things, Defendants have advertised, offered to sell and has sold products that infringe the trademarks of Plaintiff to consumers within this judicial district.  Defendants have also offered to sell and actually sold counterfeit products (described more fully below) using an interactive Internet website and knowing or having reason to know that consumers throughout the United States, including within this judicial district, would purchase

- 4 -
**COMPLAINT FOR DAMAGES**

1  said counterfeit goods from Defendants, believing that they were authentic goods

2  manufactured and distributed by Plaintiff or its authorized manufacturers.

3      13.    Venue is proper in this district, *inter alia*, pursuant to 28 U.S.C. §

4  1391(b) because, Plaintiff is informed and believes, and on that basis alleges, that a

5  substantial part of the events or omissions giving rise to these claims occurred

6  within this District and has caused damage to Plaintiff in this District.

7  **GENERAL ALLEGATIONS**

8  **A.    THE BOSE FAMOUS TRADEMARKS**

9      14.    Plaintiff was founded in 1964, by Dr. Amar G. Bose.  BOSE designs,

10  develops, manufactures, and supports a wide range of audio products including

11  headphones, earbuds, speakers, home theater systems, automotive music systems,

12  and aviation headsets for pilots.  Through extensive research and engineering,

13  Plaintiff has developed groundbreaking audio technology and innovative products,

14  including its QuietComfort® noise cancelling headphones.

15      15.    For over 60 years, BOSE products and technologies have changed

16  norms, defied trends, and delighted people all over the world.  Since its founding in

17  1964, it has been Bose's philosophy—inspired by its founder Dr. Amar G. Bose, a

18  graduate of and professor at the Massachusetts Institute of Technology—to create

19  what has not been done before. To that end, BOSE has always invested heavily in

20  researching, developing, engineering, and designing proprietary technologies that

21  separate it from its competitors. BOSE developed the first commercially-successful

22  "surround sound" speaker in 1968, the first premium car audio system in 1983, the

23  revolutionary Acoustic Wave Music System in 1984, the first active noise

24  cancelling aviation headset in 1986, the first active noise cancelling consumer

25  headphones in 1999, the first high-quality mobile speaker on the market in 2011,

26  and the first commercially successful active noise cancelling wireless earbuds in

27  2020, just to name a few.

28  / / /

16.     Plaintiff's high-performance electronic audio products include professional loudspeakers, bookshelf speakers, factory-installed sound system custom-designed for specific automobiles (i.e. Chevrolet, GMC, Maserati, and Porsche, to name a few), portable digital music systems, home theater systems, aviation headsets, and around-ear and in-ear noise cancelling headphones.

17.     Plaintiff sells its wide array of high-performance electronic audio products through its authorized retail stores and authorized dealers such as Best Buy, Walmart, and Target, on ecommerce websites such as Amazon.com, and through its own website www.bose.com.  BOSE advertises its products bearing the Marks in all these retail venues and websites.

18.     Plaintiff has built its reputation with an uncompromising commitment to developing high-performance audio products that create exceptional audio quality and sound.  Plaintiff has spent substantial resources and effort to inform customers of the benefits of Plaintiff's products and to develop consumer recognition and awareness of its trademarks in the United States and the world.  Through extensive use of the Plaintiff's Marks, including the singular famous BOSE® trademark, Plaintiff has built and developed substantial goodwill and recognition in their entire product line throughout the State of California, the United States, and the world.

19.     Because it invests so heavily in advertising and marketing, BOSE relies on trademark registrations to protect its investments. Plaintiff owns more than one hundred active trademarks in the US, with many more trademarks registered in foreign countries throughout the world.  BOSE's success depends in substantial part on its ability to create, maintain, and protect its trademarks through enforcement of its brand.  BOSE must actively police its brand against counterfeits, fakes, replicas, knock-offs, and infringing products because the BOSE® names and logos are widely recognized throughout the United States as a provider of high-quality audio and stereo products.

**COMPLAINT FOR DAMAGES**

20. Plaintiff is the exclusive owner of federally-registered trademarks. The following is a partial (non-exhaustive) list of the registered trademarks owned by Plaintiff' (the "Marks"):

| Mark | Reg. No. Reg. Date | Goods and Services (Summary) |
|------|--------------------|------------------------------|
| BOSE | 991,271 08/20/1974 | for loudspeaker systems; electrical power processors-namely, power amplifiers, inverters, and battery chargers |
| BOSE | 3,863,254 10/19/2010 | for batteries, communications headsets for use with communication radios, intercom systems, or other communications network transceivers; headphones; headsets for cellular or mobile phones; microphones |
| BOSE | 2,288,004 10/19/1999 | for computerized on-line retail services in the field of sound reproduction products, and shopping information related thereto |
| BOSE | 5,423,514 03/13/2018 | for Remote controls for audio or video products, namely, audio speakers, amplifiers, receivers, CD players, MP3 players, audio or video streaming devices, televisions, videocassette players, DVD players, or digital video recorders; Mounts and mounting brackets adapted for audio speakers; Stands adapted for audio speakers; Protective cases and covers for loudspeakers and headphones; Computer application software for mobile phones, tablets or other mobile devices, namely, software for controlling devices that enhance or amplify ambient sounds or mask noise; earphone accessories, namely, earphone cushions, earphone pads, and earphone extension cords; headphone accessories, namely, headphone cushions, headphone pads, and headphone extension cords |

**COMPLAINT FOR DAMAGES**

| Mark | Reg. No. Reg. Date | Goods and Services (Summary) |
|---|---|---|
| BOSE | 5,717,737 04/02/2019 | for cases for eyeglasses and sunglasses that incorporate loudspeakers; eyeglass frames that incorporate loudspeakers; eyewear that incorporates loudspeakers; sunglasses that incorporate loudspeakers |
| *BOSE* | 829,402 05/30/1967 | for acoustical transducer systems for reproducing sound |
| *BOSE* | 1,738,278 12/08/1992 | for printed matter, namely catalogs, newsletters, and brochures;  services and repair of electronic and electroacoustical equipment |
| *B* | 7,517,625 09/24/2024 | for batteries; headphones; loudspeakers; microphones; battery chargers; communications headsets for use with communication radios, intercom systems, or other communications network transceivers; downloadable computer application software for mobile phones, tablets or other mobile devices, namely, software for controlling devices that enhance or amplify sounds; headsets for mobile telephones; mounts and mounting brackets adapted for audio speakers with swiveling bases therefor; remote controls for audio or video products, namely, audio speakers amplifiers, receivers, CD players, MP3 players, audio or video streaming devices, televisions, videocassette players, DVD players, or digital video recorders; soundbar speakers; stands adapted for stereos and audio speakers; protective cases for audio equipment in the nature of loudspeakers and headphones |
| ACOUSTIC NOISE CANCELLING | 2,096,548 09/16/1997 | for headsets for reducing acoustic noise |

**COMPLAINT FOR DAMAGES**

| Mark | Reg. No.<br>Reg. Date | Goods and Services<br>(Summary) |
|---|---|---|
| QUIETCOMFORT | 2,539,951<br>02/19/2002 | for audio and video headsets |
| QC | 3,355,350<br>12/18/2007 | for headphones and headphone-related accessories, namely, audio cables with built-in microphones and adapters to connect headphones to cell phones |
| SOUNDLINK | 3,716,864<br>11/24/2009 | for loudspeaker systems; USB (universal serial bus) hardware |
| OPENAUDIO | 6,950,596<br>01/10/2023 | for earphones; eyeglasses; headphones; sunglasses; protective helmets |
| TRIPORT | 3,060,458<br>02/21/2006 | for headphones |
| STAYHEAR | 3,878,139<br>11/16/2010 | for headphones, headsets, accessories for headphones and headsets, namely removable soft tips for insertion of headphones in the ear |
| WAVE | 1,633,789<br>02/05/1991 | for radios, clock radios, compact stereo systems and portable compact disc players |
| A20 | 3,905,592<br>01/11/2011 | for communication headsets, intercom systems or other communication network transceivers; earphone accessories, namely earphone cushions, earphone pads, cord management systems, earphone cases, earphone extension cords; headphones; microphones |
| LIFESTYLE | 1,622,251<br>11/13/1990 | for loudspeaker systems |
| ACOUSTIMASS | 1,478,408<br>03/01/1988 | for loudspeaker systems |

21.    Particularly in light of the success of Plaintiff's products, as well as the recognized outstanding reputation it has gained, BOSE and its products have

- 9 -
**COMPLAINT FOR DAMAGES**

become targets for unscrupulous individuals and entities who wish to take a "free ride" on the substantial goodwill, reputation, and fame Plaintiff has spent considerable money, effort, and resources to build up in its products and Marks.

**B.    DEFENDANTS' WRONGFUL CONDUCT**

22.    Defendants are fulfillment logistic companies that charge foreign sellers who export and send goods into the US for "service in logistic, finance, and big data aspects of global e-commerce industry."[1]

23.    The website www.orangeconnex.com states that, "Our service includes pick-up in 185 cities, sortation, export declaration, international shipping, import customs clearance, last-mile delivery, and shipment tracking. SpeedPAK is aimed to redefine our users' cross border logistics experiences through Speed, Stability, Transparency, Cost Optimization, and Sustainability."

24.    Under the SpeedPAK Service and the Multi-Channel Terms and Conditions, Defendants claims on their website that, "Orange Connex provides certain domestic and cross-border logistics and supply chain services for Senders, including pick-up and drop-off, transportation, export clearance, import clearance for the destination country/region, order processing and delivery services."

25.    For SpeedPAK and the Multi-Channel services, Defendants state that, "**Orange Connex shall have the right to classify HS Code of the Shipments goods based on the information declared by the Sender, complete any custom declaration documents, correct Shipment declared contents, and pay relevant duties and taxes required under applicable laws and regulations, or acting as Sender/Recipient's entrusted party, complete by itself or entrust a third party to complete export/import custom clearance process in an appropriate port.**" (emphasis in original).

/ / /

_____

[1] All references are to Defendants' website www.orangeconnex.com, and all quotations from the website were taken on February 11, 2026.

- 10 -
**COMPLAINT FOR DAMAGES**

26.    Also, as part of Defendants' services, "The Shipments shall be delivered by Orange Connex to Recipient's address specified by Sender . . .."

27.    Under the Speed Freight Service Terms and Conditions, Defendants state on their website that, "This Transportation Service Agreement (hereinafter referred to as 'Agreement') is established by and between the cargo owner or its agent (hereinafter referred to as 'Party A') and Orange Connex (hereinafter referred to as 'Party B') regarding Party B's provision of transportation services for export goods via sea and air freight." Defendants further state that, "Party A shall prepare the goods and deliver them to the domestic warehouse designated by Party B at least seven (7) days (for sea freight) or five (5) days (for air freight) prior to the date of shipment (If Party A requires pick-up services arranged by Party B, this shall be separately agreed upon)."

28.    Beginning on a date that is currently unknown to Plaintiff and continuing to the present, Defendants have, without the consent of Plaintiff, provided fulfilment and logistic services to foreign eBay sellers to export and deliver counterfeit products and goods bearing the BOSE® Marks to consumers in the United States (including within this judicial district).  These goods were neither made by Plaintiff nor by a manufacturer authorized by Plaintiff (such goods are hereafter referred to as "Counterfeit Goods") using reproductions, counterfeits, copies and/or colorable imitations of one or more of the subject Marks.

29.    Defendants' website further advertise that, "eBay Fulfilment by Orange Connex offers an exceptional fulfilment service – including same day handling, late cut off times for next day or standard delivery to your customers. This service also offers end-to-end management of your inventory, giving you peace of mind that you'll be protected against any defects related to deliveries."

30.    Plaintiff is informed and believes, and on that basis alleges, that Defendants ORANGE CONNEX imports counterfeit goods into the United States from China and Hong Kong bearing unauthorized BOSE® Marks and arranges the

**COMPLAINT FOR DAMAGES**

transportation, storage, inventory, and/or packaging of Counterfeit Goods to its numerous warehouses throughout the US as the ultimate consignee and/or importer of record for foreign freight not yet sold to consumers.

31.    Plaintiff is informed and believes, and on that basis alleges, that Defendants ORANGE CONNEX imports, warehouses, stores, fulfills orders, and distributes Counterfeit Goods to domestic consumers in the United States that are advertised for sale and sold online by foreign third-party sellers on eBay.com ("eBay"), including but not limited to foreign third-party sellers operating on eBay under the seller IDs "eubestpods2," "sylpods," "cabestpods," and "wvoq9459" ("Third-Party Sellers").

32.    Through such business activities, Defendants purposely derived financial benefit from their interstate commerce activities. But for Defendants' fulfillment services for Third-Party Sellers of counterfeit BOSE®-branded products, US consumers would not have received delivery of these Counterfeit Good.

33.    On June 3, 2025, in their ongoing investigation of counterfeit sales of BOSE®-branded products, from the State of California, Plaintiff purchased a "Bose QuietComfort 35 QC35 series II Wireless Headphones Noise-Cancelling Silver" (eBay Item # 167029172184) from eBay seller ID "eubestpods2" for a cost of $166.82 USD.

34.    On or around June 10, 2025, Plaintiff received a package, pursuant to the June 3, 2025, order from eBay seller "eubestpods2," with a shipping label return address from Defendants' warehouse at 1000 High St., Perth Amboy, NJ 08861.  The package contained headphones bearing BOSE® Marks.

35.    On September 23, 2025, via USPS Certified Mail and by email, Plaintiff's legal counsel issued a cease-and-desist letter to Defendants, demanding that Defendants immediately stop the use, sale, and distribution of products bearing the Marks; provide a full accounting of its sales and distribution of the Counterfeit

**COMPLAINT FOR DAMAGES**

Goods; identify their supplier of the Counterfeit Goods; forfeit to BOSE all the Counterfeit Goods, and contact BOSE's counsel to resolve this claim of infringement.

36.    After receiving notice of Plaintiff's claim of trademark infringement relating to Defendants' distribution of the Counterfeit Goods, Defendants intentionally and recklessly continued to provide fulfillment and logistic services for a fee to the Third-Party Sellers.

37.    On November 6, 2025, in their ongoing investigation of counterfeit sales of BOSE®-branded products, from the State of California, Plaintiff purchased a "789564-0010 Bose QuietComfort 35 II Wireless Noise Cancelling Headphones Silver" (eBay Item # 374553624979) from eBay seller ID "sylpods" for a cost of $163.69 USD.

38.    On or around November 18, 2025, Plaintiff received a package, pursuant to the November 6, 2025, order from eBay seller "sylpods," with a shipping label return address from Defendants' warehouse at 1000 High St., Perth Amboy, NJ 08861.  The package contained headphones bearing BOSE® Marks.

39.    On December 4, 2025, in their ongoing investigation of counterfeit sales of BOSE®-branded products, from the State of California, Plaintiff purchased a "QuietComfort 35 II Noise Cancelling Headphones Bluetooth Wireless Silver" (eBay Item # 167956433866) from eBay seller ID "cabestpods4" for a cost of $151.18 USD.

40.    On or around December 16, 2025, Plaintiff received a package, pursuant to the December 4, 2025, order from eBay seller "cabestpods4," with a shipping label return address from Defendants' warehouse at 1000 High St., Perth Amboy, NJ 08861.  The package contained headphones bearing BOSE® Marks.

41.    On January 7, 2026, in their ongoing investigation of counterfeit sales of BOSE®-branded products, from the State of California, Plaintiff purchased a "QC 35 QC35 Series II Wireless Noise Cancelling Headphones Headset" (eBay

**COMPLAINT FOR DAMAGES**

Item # 376764940030) from eBay seller ID "sylpods" for a cost of $140.48 USD.

42.    On or around January 20, 2026, Plaintiff received a package, pursuant to the January 7, 2026, order from eBay seller "sylpods," with a shipping label return address from Defendants' warehouse at 1000 High St., Perth Amboy, NJ 08861.  The package contained headphones bearing BOSE® Marks.

43.    On January 13, 2026, in their ongoing investigation of counterfeit sales of BOSE®-branded products, from the State of California, Plaintiff purchased a " 🎧 Brand New!_Bose Ultra Open - Ear True Wireless Bluetooth Open Earbuds" (eBay Item # 205943629575) from eBay seller ID "wvoq9459" for a cost of $53.33 USD.

44.    On or around January 20, 2026, Plaintiff received a package, pursuant to the January 13, 2026, order from eBay seller "wvoq9459," with a shipping label return address from Defendants' warehouse at 5880 West Fuqua Street, Suite 200, Houston, TX 77085.  The package contained earbuds bearing BOSE® Marks.

45.    The products purchased from Defendants were inspected by Plaintiff to determine authenticity. Plaintiff's inspection of the purchased items using security measures confirmed that the items Defendants sold to Plaintiff's investigator were in fact a counterfeit "Bose" branded product.

46.    Plaintiff's counsel repeatedly placed Defendants and their counsel on notice on December 3 and 18, 2025; and also on January 6, 9, 15, 20, and 29, 2026, of the ongoing and continuous sale of the Counterfeit Goods bearing the BOSE® Marks being fulfilled and distributed by Defendants.

47.    Defendants ORANGE CONNEX and its counsel ignored Plaintiff's numerous demands that Defendants cease fulfillment activities for the Third-Party Sellers.  From September 23, 2025, through January 29, 2026, when Plaintiff was trying to obtain Defendants' cooperation and to resolve this matter prior to litigation, Defendants continued to intentionally and recklessly provide fulfillment and logistic services to the Third-Party Sellers by distributing the Counterfeit Goods to

**COMPLAINT FOR DAMAGES**

consumers in the United States.

48.     Defendants willfully use images and marks identical to Plaintiff's Marks to confuse consumers and to aid in the promotion and sales of their unauthorized and counterfeit product.  Defendants' willful use of Plaintiff's Marks includes importing, advertising, displaying, distributing, selling and/or offering to sell unauthorized copies of Plaintiff's BOSE®-branded products.  Defendants' use of Plaintiff's Marks began long after Plaintiff's adoption and use of its trademarks, and after Plaintiff obtained the trademark registrations alleged above.  Plaintiff has not granted Defendants authorization to use its Marks.

49.     Defendants' actions have confused and deceived, or threatened to confuse and deceive, the consuming public concerning the source and sponsorship of the counterfeit BOSE®-branded products sold and distributed by Defendant.  By their wrongful conduct, Defendants have traded upon and diminished Plaintiff's goodwill.   Furthermore, the sale and distribution of Counterfeit Goods by Defendants have infringed upon Plaintiff's federally registered trademarks.

50.     Defendants' conduct of importing, transporting, warehousing, storing, fulfilling orders, and/or distributing and encouraging others to import Counterfeit Goods in this manner was and is likely to cause confusion or mistake and/or to deceive consumers who purchase the Counterfeit Goods.

51.     Defendants also offered to sell, sold, imported, and/or encouraged others to import for the purpose of resale within the United States, Counterfeit Goods consisting of reproductions and/or copies of products bearing Plaintiff' Marks.  Defendants did not have BOSE's authorization to use its Marks.

52.     Plaintiff has never authorized or consented to Defendants' use of Plaintiff's BOSE® or other Marks, or any confusingly similar marks, or copied or derivative works by Defendants, nor has Plaintiff authorized Defendants to manufacture, copy, sell, import, market, or distribute any BOSE®-branded product. / / /

**COMPLAINT FOR DAMAGES**

## FIRST CAUSE OF ACTION

**(Trademark Infringement Against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)**
**[15 U.S.C. § 1114/*Lanham Act* § 32]**

53.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

54.    Defendants' actions as described herein constitute direct trademark infringement in violation of 15 U.S.C. § 1114(1)(a).

55.    Plaintiff is the exclusive owner of the federally registered Marks.

56.    Defendants import, transport, warehouse, store, fulfill orders, and distribute products to domestic consumers in the United States that are advertised for sale and sold online by the Third-Party Sellers through eBay.com who regularly and systematically advertised, marketed, distributed and sold products bearing unauthorized BOSE® Marks.

57.    On June 3, 2025, Plaintiff purchased BOSE® QC35 headphones for $166.82 from eBay seller "eubestpods2":



58.    On November 6, 2025, Plaintiff purchased BOSE® QC35 headphones for $163.69 from eBay seller "sylpods":

**COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13    59.    On December 3, 2025, Plaintiff purchased BOSE® QC35 headphones

14    for $151.18 from eBay seller "cabestpods4":



15

16

17

18

19

20

21

22

23

24

25

26

27    60.    On January 7, 2026, Plaintiff purchased BOSE® QC35 headphones

28    for $140.48 from eBay seller "sylpods":

**COMPLAINT FOR DAMAGES**



61.    On January 13, 2026, Plaintiff purchased BOSE® Ultra Open earbuds for $53.33 from eBay seller "wvoq9459":

62.    The products purchased from eBay storefront under the IDs "eubestpods2," "sylpods," "cabestpods," and "wvoq9459" were inspected by

**COMPLAINT FOR DAMAGES**

Plaintiff to determine authenticity.  Plaintiff's inspection of the purchased items using security measures confirmed that the items Defendants sold to Plaintiff were in fact counterfeit "BOSE" products.

63.    Based on an examination of Defendants' listings of BOSE® branded products on eBay, their price points, and their product description, Plaintiff is informed and believe that Defendants import, transport, warehouse, store, fulfill orders, and/or distribute thousands of units of counterfeit products of various product lines and models bearing numerous BOSE's Marks.

64.    The five purchases of counterfeit BOSE-branded products were imported, transported, warehoused, stored, fulfilled, and/or distributed by Defendants through warehouses in the United States owned and/or operated by Defendants.

65.    Defendants' intentional distribution of fake, pirated and counterfeit items bearing Plaintiff's Marks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine products manufactured by Plaintiff.

66.    Defendants' willful use of Plaintiff's Marks includes the importing, transporting, warehousing, storing, fulfilling of orders, and/or distributing unauthorized copies of Plaintiff's BOSE®-branded products.  Defendants' use of Plaintiff's Marks began long after Plaintiff's adoption and use of its trademarks, and after Plaintiff obtained the trademark registrations alleged above.  Neither Plaintiff nor any of its authorized agents have consented to Defendants' use of Plaintiff's Marks.

67.    Defendants charge Third-Party Sellers to arrange the transportation, storage, inventory, and packaging of Counterfeit Goods to its numerous warehouses throughout the United States as the ultimate consignee and/or importer of record for foreign freight not yet sold to consumers.

/ / /

68.    Plaintiff is informed and believe, and on that basis alleges, that Defendants knew or shown have known that Third-Party Sellers using its importation, transportation and distribution services were using Defendants domestic warehouse distribution locations and services to deal in counterfeit and/or otherwise infringing products bearing the BOSE® Marks.

69.    Plaintiff is informed and believe, and on that basis alleges, that Defendants have direct control and monitoring of the domestic instrumentality used by Third-Party Sellers to facilitate the importation, transportation, sale and distribution of counterfeit and/or otherwise Counterfeit Goods.

70.    Plaintiff is informed and believe, and on that basis alleges, that Defendants' entire business model of providing domestic importation, transportation, warehousing, distribution, and shipping services for overseas Third-Party Sellers is premised upon shielding their customers' identities and infringing activities and intentionally inducing Third-Party Sellers to infringe Plaintiff's Marks by offering to facilitate and actually facilitating the importation, transportation, sale and distribution of Counterfeit Goods in the United States.

71.    As a proximate result of Defendants' trademark infringement, Plaintiff has been damaged in an amount to be proven at trial.  Further, as a proximate result of Defendants' trademark infringement, Defendants have unlawfully profited in an amount to be proven at trial.

72.    At all relevant times, Defendants acted intentionally and/or willfully in using Plaintiff's Marks on the Counterfeit Goods, knowing that said Marks belong to Plaintiff, that the status of the Counterfeit Goods was in fact counterfeit, and that Defendants were not authorized to use Plaintiff's Marks on the Counterfeit Goods.  Plaintiff is therefore entitled to recovery of treble damages pursuant to 15 U.S.C. § 1117(a).  Further, Defendants' knowing, intentional and/or willful actions make this an exceptional case, entitling Plaintiff to an award of reasonable attorney fees pursuant to 15 U.S.C. § 1117(a).

**COMPLAINT FOR DAMAGES**

73.     Defendants' actions also constitute the use of one or more "counterfeit mark" as defined in 15 U.S.C. § 1116(d)(1)(B).  Plaintiff therefore reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and/or (2).

74.     The acts of direct trademark infringement committed by Defendants has caused, and will continue to cause, Plaintiff irreparable harm unless they are enjoined by this Court.

## SECOND CAUSE OF ACTION

**(False Designation of Origin, False or Misleading Advertising Against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)**

**[15 U.S.C. § 1125 (a)/*Lanham Act* § 43(a)]**

75.     Plaintiff hereby incorporate by reference each of the other allegations set forth elsewhere in this Complaint as thought fully set forth in this cause of action.

76.     Plaintiff has made at least five evidentiary purchases that were imported, transported, warehoused, stored, fulfilled, and/or distributed by Defendants, has inspected these products for their authenticity, and has determined that these products are counterfeit goods bearing various BOSE® Marks.

77.     Defendants act as the ultimate consignee and/or importer of record for Third-Party Sellers of the Counterfeit Goods.

78.     Defendants' actions as described herein constitute a direct violation of 15 U.S.C. § 1125(a)(1)(A), as such actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff and/or as to the origin, sponsorship, and/or approval of such Counterfeit Goods by Plaintiff.

79.     As a proximate result of Defendants' violation as described herein, Plaintiff has been damaged in an amount to be proven at trial.  Further, Plaintiff

**COMPLAINT FOR DAMAGES**

allege on information and belief that, as a proximate result of Defendants' direct trademark infringement, Defendants have unlawfully profited, in an amount to be proven at trial.

80.    Defendants' acts of violating directly Section 1125 have caused, and will continue to cause, Plaintiff irreparable harm unless they are enjoined by this Court.

### THIRD CAUSE OF ACTION

**(Dilution Against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)**

**[15 U.S.C. § 1125(c)]**

81.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

82.    Plaintiff's Marks are distinctive and famous within the meaning of the *Lanham Act*.

83.    Upon information and belief, Defendants' unlawful actions began long after Plaintiff's Marks became famous, and Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiff's reputation and to dilute Plaintiff's Marks. Defendants' conduct is willful, wanton, and egregious.

84.    Defendants' intentional importing, transporting, warehousing, storing, fulfilling of orders, and/or distributing of fake, pirated and counterfeit items bearing Plaintiff's Marks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine products manufactured by Plaintiff. Defendants' actions complained of herein have diluted and will continue to dilute Plaintiff's Marks, and are likely to impair the distinctiveness, strength and value of Plaintiff's Marks, and injure Plaintiff's business reputation and its Marks.

/ / /

- 22 -
**COMPLAINT FOR DAMAGES**

85.    Defendants' acts have caused and will continue to cause Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

86.    As the acts alleged herein constitute a willful violation of section 43(c) of the *Lanham Act*, 15 U.S.C. § 1125(c), Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. §§ 1116, 1117, 1118, and 1125(c), including Defendant's profits, treble damages, reasonable attorney's fees, costs and prejudgment interest.

## FOURTH CAUSE OF ACTION

**(Unfair Competition Against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)**

***California Business and Professions Code* § 17200 *et seq.***

87.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

88.    Defendants' actions described herein constitute unlawful, unfair and/or fraudulent business acts or practices.  Defendants' actions thus constitute "unfair competition"pursuant to *California Business and Professions Code* § 17200.

89.    As a proximate result of Defendants' actions, Plaintiff has suffered an injury in fact, including without limitation, damages in an amount to be proven at trial, loss of money or property, and diminution in the value of its Marks.  Plaintiff therefore has standing to assert this claim pursuant to *California Business and Professions Code* § 17204.

90.    Defendants' actions have caused, and will continue to cause Plaintiff to suffer irreparable harm unless enjoined by this Court pursuant to *California Business and Professions Code* § 17203.  In addition, Plaintiff requests that the

**COMPLAINT FOR DAMAGES**

Court order that Defendants disgorge all profits wrongfully obtained as a result of Defendants' unfair competition, and order that Defendants pay restitution to Plaintiff in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Contributory Trademark Infringement Against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)

91.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

92.    Plaintiff is the exclusive owner of the various BOSE® Marks and possesses the trademark registrations for the same with the U.S.P.T.O.

93.    Defendants did not and failed to obtain the consent or authorization of Plaintiff to use the Marks to deal in and/or commercially import, transport, warehouse, distribute, fulfill orders for and/or ship products to consumers.

94.    Defendants were aware (or were on actual and constructive notice) that Plaintiff is the registered owner of the Marks.

95.    Third-Party Sellers (on eBay.com or otherwise) have infringed upon Plaintiff's Marks by offering for sale and selling counterfeit products bearing the Marks by using the services offered by Defendants.

96.    By importing, transporting, warehousing, distributing, shipping and/or otherwise dealing in counterfeit BOSE-branded products for Third-Party Sellers, Defendants have substantially and materially contributed to the infringement of Plaintiff's Marks and profited from the same.

97.    Defendants have induced infringement of the Bose Marks by providing Third-Party Sellers with the unrestricted ability to transport counterfeit BOSE-branded products from China and Hong Kong to warehouses in the United States for prompt shipment and delivery to unsuspecting online purchasers in the United

**COMPLAINT FOR DAMAGES**

States.

98.    Defendants have no policies or procedures in place to adequately and effectively detect, monitor, prevent, or, upon notice, cease the distribution of counterfeit BOSE-branded products.

99.    Defendants knew or should have known that the products they were dealing in, receiving payment for, manufacturing, distributing, selling, and/or advertising on behalf of their customers were counterfeit and infringing upon the Marks.

100.    Despite receiving multiple notices of Plaintiff's ownership of the Marks and the counterfeit nature of the BOSE-branded products being offered for sale and sold by Defendants' customers, Defendants continued to import, transport, and distribute the Counterfeit Goods.

101.    Defendants are being willfully blind to the intentional infringement of Plaintiff's Marks by Third-Party Sellers because Defendants continued to provide fulfillment and logistic service for a fee to these customers.

102.    As a proximate result of Defendants' actions, Plaintiff has suffered monetary damage as well as irreparable harm and unquantifiable damage to Plaintiff's Marks, reputation, and goodwill.

## SIXTH CAUSE OF ACTION

**(Vicarious Trademark Infringement against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)**

103.    Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as though fully set forth in this cause of action.

104.    Plaintiff is the exclusive owner of the various BOSE® Marks and possesses the trademark registrations for the same with the U.S.P.T.O.

/ / /

- 25 -
**COMPLAINT FOR DAMAGES**

105.    Defendants have derived business financial gains and profited directly from the use of Defendants' importation, warehousing, and/or distribution services by the Third-Party Sellers to distribute counterfeit BOSE-branded products in the United States and in the Central District of California.

106.    Defendants have entered into contracts and/or business relationships (either written, oral, or implied-in-fact) with the Third-Party Sellers relating to the advertisement, offering for sale, sale, importation, transportation, storage, warehousing, distribution, shipping and/or otherwise dealing in the Counterfeit Goods.

107.    Defendants had the right and ability to supervise and/or control the infringing activity of the Third-Party Sellers using their services as evidenced by Defendants' importation and physical possession of counterfeit BOSE products, Defendants' ability to prevent the Third-Party Sellers from using their services to sell and distribute counterfeit goods bearing the Marks, and Defendants' ability to inspect inventory received from the Third-Party Sellers before distributing any products.

108.    Defendants failed to exercise their right and ability to supervise and/or control the infringing activity of the Third-Party Sellers upon notice and continued to provide their services to known Third-Party Sellers who use Defendants' services to sell and distribute the Counterfeit Goods.

109.    As a proximate result of Defendants' actions, Plaintiff has suffered monetary damage as well as irreparable harm and unquantifiable damage to its Marks, reputation, and goodwill.

/ / /

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

**SEVENTH CAUSE OF ACTION**

**(Declaratory Relief Against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10)**

110.   Plaintiff hereby incorporates by reference each of the other allegations set forth elsewhere in this Complaint as thought fully set forth in this cause of action.

111.   Defendants' actions as described herein constitute direct, contributory, and vicarious violations of 15 U.S.C. § 1114(1)(a); direct, contributory, and vicarious violations of 15 U.S.C.§ 1125(a)(1)(A); have diluted and will continue to dilute Plaintiff's Marks; and are unlawful, unfair and/or fraudulent business acts or practices under California law.

112.   An actual controversy has manifested in that Defendants will continue to infringe on Plaintiff's Marks unless their actions are declared unlawful and enjoined by the Court.

113.   Plaintiff requests judicial determination that Defendants have committed the aforementioned acts; that Plaintiff has no adequate remedy at law; that there is a present controversy between Plaintiff and Defendants for which a declaratory judgment should be entered to determine that Defendants' conduct constitutes infringement of Plaintiff's Marks pursuant to 15 U.S.C. §§ 1114(1)(1) and 1125(a)(1)(A), that such conduct diluted and will continue to dilute Plaintiff's Marks, and that such conduct by Defendants constitutes unlawful, unfair and/or fraudulent business acts or practices.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff hereby respectfully requests the following relief against Defendants ORANGE CONNEX GLOBAL USA CORPORATION; ORANGE CONNEX GLOBAL USA INC; ORANGE CONNEX GLOBAL GROUP LIMITED; and DOES 1-10, inclusive, and each of them as follows:

- 27 -

**COMPLAINT FOR DAMAGES**

1.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. § 1114(a);

2.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. § 1125(a);

3.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. § 1125(c);

4.    In the alternative to actual damages and Defendants' profits for the infringement and counterfeiting of Plaintiff's Marks pursuant to the *Lanham Act*, for statutory damages pursuant to 15 U.S.C. § 1117(c), which election Plaintiff will make prior to the rendering of final judgment;

5.    Pursuant to 15 U.S.C. § 1117(b), for three times Defendants' profits or Plaintiff's damages, whichever amount is greater, together with a reasonable attorney's fees and costs;

6.    For statutory damages of $200,000.00 per counterfeit mark per type of goods and services sold, offered for sale, or distributed by Defendants, pursuant to 15 U.S.C. § 1117(c)(1);

7.    For statutory damages of $2,000,000.00 per counterfeit mark per type of goods and services sold, offered for sale, or distributed by Defendants, pursuant to 15 U.S.C. § 1117(c)(2);

8.    For a constructive trust freezing, impounding, and/or levying Defendants' financial assets at banks and financial institutions;

9.    For restitution in an amount to be proven at trial for unfair, fraudulent and illegal business practices under *California Business and Professions Code* § 17200;

10.    For an injunction by this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising and/or dealing in any

**COMPLAINT FOR DAMAGES**

counterfeit product; the unauthorized use of any mark or other intellectual property right of Plaintiff; acts of trademark infringement or dilution; false designation of origin; unfair competition; and any other act in derogation of Plaintiff's rights;

11.     For an order from the Court requiring that Defendants provide complete accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and or pay restitution, including monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

12.     For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiff; for an order from the Court preventing Defendants' transferring or disposing of any money or tangible assets until further order from the Court; for an order from the Court such that any banks, savings and loan associations, credit unions, credit card payment processors, merchant accounts, or other financial institutions, shall immediately locate all accounts connects to Defendants and shall be restrained and enjoined from transferring or disposing of any money or other tangible assets of Defendants until further order from this Court;

13.     For an award of exemplary or punitive damages in an amount to be determined by the Court;

14.     For Plaintiff' reasonable attorney's fees;

15.     For all costs of suit; and

16.     For such other and further relief as the Court may deem just and equitable.

DATED:  February 20, 2026          CRITERION COUNSEL,
                                   LAW CORPORATION


                                   By: _/s/ Marcus F. Chaney_____
                                   Christopher Q. Pham
                                   Marcus F. Chaney

**COMPLAINT FOR DAMAGES**

1
2
3

Attorneys for Plaintiff
BOSE CORPORATION

4

## **DEMAND FOR JURY TRIAL**

5
6
7

Plaintiff BOSE CORPORATION respectfully demands a trial by jury in this action.

8
9
10

DATED:  February 20, 2026          CRITERION COUNSEL,
                                   LAW CORPORATION

11
12
13
14

By: _/s/ Marcus F. Chaney_____
Christopher Q. Pham
Marcus F. Chaney
Attorneys for Plaintiff
BOSE CORPORATION

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES**